MOUNTAIN WHOLESALE CO., INCORPORATED, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 9170. Promulgated November 28, 1951.

*Geo. E. H. Goodner, Esq.*, and *Scott P. Crampton, Esq.*, for the petitioner.

*Lester M. Ponder, Esq.*, and *Roy A. Wentz, Esq.*, for the respondent.

OPINION.

LEECH, *Judge:* In determining the pending deficiencies, respondent has refused to accept the transaction under which petitioner acquired from "A," at a consideration stated to be its book value, the warehouse building formerly used by it at Appalachia, Virginia, and certain old accounts and notes receivable at a stated purchase price of 100 cents on the dollar, as bona fide, arm's length transactions. It is his contention that the assets thus acquired by petitioner were so manifestly less in value than the value of the consideration claimed to have

been paid therefor that such consideration must be presumed to have been paid for something more than the mere assets received. Under such conditions he contends that the property acquired does not take a basis of the stated consideration but rather the basis of its fair market value at date of acquisition. We agree with respondent that this is the rule where property is acquired in a transaction not at arm's length for a sum manifestly in excess of its fair market value. *Pierre S. duPont*, 37 B. T. A. 1198, affd. 118 F. 2d 544, certiorari denied 314 U. S. 623. It is well established that cost is not always the amount actually paid in acquisition of property. Amounts in excess of market value may have been paid for other purposes rather than the acquisition of the property. We think that the action of respondent was correct in his application of the rule in view of the circumstances established by the record. Here "A," unsuccessful in its operations and moribund, was to be liquidated. This action was taken and the owners of that corporation organized the petitioner corporation at Lothair, Kentucky, to carry on a wholesale grocery business at that point, which business was thereafter carried on by petitioner to the date of its dissolution in April 1943. "A" owned a warehouse building at Appalachia, Virginia, which it was abandoning and which it was unable to sell at a price approaching its book value. It also had on its books certain old accounts. The active operations of the corporation had ceased, and if these old accounts were charged off, no tax benefit to "A" could be secured. Likewise, if the building were sold by "A" it would necessarily be at a loss, the benefit of which could not be secured. Under these conditions the parties interested in "A," which were the same parties interested in petitioner, caused "A" to borrow on its notes, personally endorsed by one or more of these individuals, the amount of cash necessary to acquire all the issued common stock of petitioner. The warehouse of "A" and worthless accounts of that corporation were transferred to petitioner ostensibly at book value by the assumption of the note indebtedness of "A." The latter corporation was then dissolved and the common stock of petitioner distributed in liquidation to its stockholders.

The evidence establishes that the fair market value of the warehouse at Appalachia, Virginia, was far below the amount ostensibly paid in its acquisition by petitioner; in fact the fair market value determined by respondent in computing the allowable cost appears to us to have been most generous. As for the accounts receivable transferred at an ostensible purchase price to petitioner of 100 cents on the dollar, the evidence convinces us this transfer was a sham and lacked good faith. No ordinary business man in his right mind would buy even a first class account for a sum which merely gave him the legal right to collect that amount from another. These were delinquent accounts, many of which were years overdue and manifestly

uncollectible. We think the reason for the acquisition in this form was to secure, if possible, their deduction by petitioner as bad debts from its income resulting from its operations after its organization.

As to the issue pertaining to the assertion of a 5 per cent penalty for failure by petitioner to file timely returns for the taxable year ended September 30, 1942, the action of respondent is approved. No evidence upon this issue was presented by the petitioner to show that the tardy filing was due to reasonable cause and not to willful neglect.

*Decision will be entered for the respondent.*